Clyde D. Graeber, Secretary Kansas Department of Health and Environment Capitol Tower 400 S.W. 8th Street, Suite 200 Topeka, Kansas 66603-3930
Dear Secretary Graeber:
As Secretary of the Kansas Department of Health and Environment, you ask whether a provision of Kansas law is consistent with the federal Clean Water Act. The Kansas provision about which you inquire is found within K.S.A. 1999 Supp. 65-171d(d):
 "If a freshwater reservoir or farm pond is privately owned and where complete ownership of land bordering the reservoir is under common ownership, such freshwater reservoir or farm pond shall be exempt from water quality standards except as it relates to water discharge or seepage from the reservoir or pond to waters of the state, either surface or groundwater, or as it relates to the public health of persons using the reservoir or pond or waters therefrom."
The fundamental question posed is whether the term "reservoir or farm pond," as used in this Kansas statute, falls within the federal Clean Water Act definition for "waters of the United States." The consequence of the answer is this: If a "reservoir or farm pond" is a "water of the United States," such is covered by the Clean Water Act and water quality standards apply. Alternatively, if a "reservoir or farm pond" is not a "water of the United States," such is not covered by the Clean Water Act and water quality standards do not apply.
 The Federal Clean Water Act
Our analysis begins with the federal Clean Water Act (CWA),[1]
enacted by Congress in 1972. The Congressional objective of this Act was "to restore and maintain the chemical, physical and biological integrity of the Nation's waters."[2] To achieve this objective, Congress established several national goals, one of which was to eliminate the discharge of pollutants into the navigable waters.[3] The CWA prohibits the discharge of any pollutant by any person "into the navigable waters of the United States, except in compliance with various provisions of the Act."[4] The Environmental Protection Agency (EPA) and the Army Corps of Engineers share responsibility for administering and enforcing the CWA.
For purposes of the CWA, "navigable waters" means "waters of the United States, including the territorial seas."[5]
 "Although the Act prohibits discharges into `navigable waters,' the Act's definition of `navigable waters' as `the waters of the United States' makes it clear that the term `navigable' as used in the Act is of limited import. In adopting this definition of `navigable waters,' Congress evidently intended to repudiate limits that had been placed on federal regulation by earlier water pollution control statutes and to exercise its powers under the Commerce Clause to regulate at least some waters that would not be deemed `navigable' under the classical understanding of that term."[6]
Clearly, Congress intended to create a very broad grant of jurisdiction in the Clean Water Act.[7] "Waters of the United States" is an extremely extensive concept covering almost — but not all — surface waters that are geographically located within the United States. As one court stated, "we are confident that the statute Congress enacted excludes some waters, . . ."[8]
To meet the objective established by Congress, the EPA developed a regulation that specified the meaning of the term "waters of the United States" and the Corps of Engineers adopted a comparable definition. Those regulations, in pertinent part, define "waters of the United States" as:
 "(c) All other waters such as intrastate lakes, rivers, streams (including intermittent streams), mudflats, sandflats, `wetlands,' sloughs, prairie potholes, wet meadows, playa lakes, or natural ponds
the use, degradation, or destruction of which would affect or could affect interstate or foreign commerce. . . .[9]
Within this definition, our attention is drawn to the phrase "natural pond." That phrase appears to mean exactly what it says as indicated in a fairly recent 7th Circuit Court case[10] that addressed whether the CWA's coverage extended to an artificially constructed retention pond.[11] The Circuit Court first acknowledged the United States Supreme Court's construction of the CWA as a broad statute, reaching waters and wetlands that are not navigable or even directly connected to navigable waters. However, the Court went on to say:
 "But not even the EPA shares Justice Story's view that the national government has regulatory power over every drop of water. `It was said of the late Justice Story, that if a bucket of water were brought into his court with a corn cob floating in it, he would at once extend the admiralty jurisdiction of the United States over it.' . . . Hoffman Homes, Inc. v. Administrator, EPA, 999 F.2d 256, 260-61 (7th Cir. 1993), concluded that the EPA did not exceed its power when promulgating this definition [of "waters of the United States"] but that even a rule with such broad scope did not cover a one-acre wetland 750 feet from a small creek. A six-acre retention pond, farther from a body of surface water, is an easier case. The EPA's definition speaks of `natural ponds'; Dayton Hudson built an artificial pond."[12]
Subsequently, a federal district court, citing the 7th Circuit Court's decision, noted:
 "[P]laintiffs also suggest that the tailings ponds themselves constitute `navigable waters.' This is wrong. The EPA definition of navigable waters includes only `natural' ponds, as opposed to manmade collection systems."[13]
An extensive search for other cases addressing the CWA's applicability to artificially constructed ponds has proved fruitless. It appears that ponds in general have rarely been the subject of CWA litigation and that farm ponds in particular never have been.[14] However, the notion that the CWA does not cover non-natural ponds is bolstered by a Corps of Engineers regulation.
Within the context of the CWA, the Corps of Engineers also developed a series of regulations in relation to permits for discharges of dredged or fill material into waters of the United States.[15] In the definition section, the term "waters of the United States" is tied to the primary EPA and Corps of Engineers definition (including the portion quoted above); however, the term "lake" is given a further specific meaning:
 "The term lake means a standing body of open water that occurs in a natural depression fed by one or more streams from which a stream may flow, that occurs due to the widening or natural blockage or cutoff of a river or stream, or that occurs in an isolated natural depression that is not a part of a surface river or stream. The term also includes a standing body of open water created by artificially blocking or restricting the flow of a river, stream, or tidal area. As used in this regulation, the term does not include artificial lakes or ponds created by excavating and/or diking dry land to collect and retain water for such purposes as stock watering,
irrigation, settling basins, cooling, or rice growing."[16]
We understand that the EPA considers a Corps of Engineers regulation persuasive. Further, we note that the Corps' regulation is consistent with the EPA's inclusion only of "natural ponds," as well as with the two federal cases that addressed "ponds." In relation to this issue, we conclude that the EPA's definition of "waters of the United States" includes only "natural ponds" and does not include non-natural ponds.
 Kansas Law: Problems and Solutions
(1) K.S.A. 1999 Supp. 171d(d): "Reservoir or Farm Pond"
As discussed previously, "natural ponds" are not excluded from the meaning of "waters of the United States" for purposes of the CWA. The difficulty presented by use of the phrase "reservoir or farm pond" in K.S.A. 1999 Supp. 65-171d(d) is that in the absence of a specified meaning, it is impossible to discern whether "reservoir or farm pond" refers to natural ponds or non-natural ponds. The phrase should be defined to allow a meaningful determination whether a "reservoir or farm pond," as that term is used in K.S.A. 1999 Supp. 65-171d(d), falls within the jurisdiction of the CWA.
With the adoption of a regulation by the Secretary of Health and Environment that defines "reservoir or farm pond" as follows, a portion of the dilemma would be resolved:
 "Reservoir or farm pond," as used in K.S.A. 65-171d(d), means a non-naturally occurring pool of water created by impoundment behind a manmade structure to divert and store streamflow of a stream, creek or overland flow, or by excavation of a pit or basin to store water.
Such a definition would clarify that the "reservoirs or farm ponds" to which K.S.A. 1999 Supp. 65-171d(d) refers are not "natural ponds," and therefore not within the EPA's definition of "waters of the United States." Based on information from the Kansas Department of Health and Environment, the Kansas Water Office and the United States Geological Survey, we understand that nearly all pools of water located on Kansas farms are not natural but rather are the result of manmade construction. Thus upon adoption of the proposed definition, K.S.A. 1999 Supp.65-171d(d) would be consistent with the Clean Water Act. Additionally, such privately owned "reservoirs and farm ponds," whether privately or publicly owned, would not be subject to CWA water quality standards.[17]
(2) The 1987 Attorney General Opinion
In 1987, former Attorney General Robert T. Stephan opined that a "pond or reservoir could theoretically be a navigable water, into which the unpermitted discharge of pollutants is prohibited by federal law" and thus he concluded that "state law is not as broad as federal law in this area."[18] However, with our recommended definition of "reservoir or farm pond" in place, a surface body of water as so described would thennot be a "natural pond" and thus would not be "waters of the United States" under the EPA definition, i.e., "navigable waters" under the CWA.
As indicated previously, the CWA was designed to prohibit the discharge of pollutants into navigable waters, i.e., waters of the United States. Accordingly, if a body of water is not a water of the United States, the discharge of pollutants into it is not prohibited by the CWA.[19]
Consequently, we would no longer consider the quoted statements from the 1987 Attorney General opinion as relevant because anything flowing into
such a manmade "reservoir or farm pond" would not be flowing into a "water of the United States."
(3) K.A.R. 28-16-28g
The following provision is found within the Kansas surface water quality standards regulations:[20]
 "Application of standards to privately-owned surface waters. The application of water quality standards to privately owned water bodies shall be subject to the provisions of K.S.A. 65-171d."[21]
"Private surface water" means "any lake or wetland that is both located on and completely bordered by land under common private ownership."[22]
Thus, the quoted regulation actually means that privately owned lakes or wetlands are subject to the provisions of K.S.A. 65-171d and, therefore, exempt from water quality standards.[23] This outcome is clearly inconsistent with the EPA definition of "waters of the United States" that specifically includes "lakes" and "wetlands."
The legal problem with this regulation under Kansas law is that in relation to private ownership, K.S.A. 65-171d addresses only "reservoirs and farm ponds" and not lakes or wetlands. Subsection (f) of K.A.R.28-16-28c is thus not authorized by that statute. To be valid, a regulation must come within the authority conferred by statute, and a regulation which goes beyond that which the Legislature has authorized or which extends the source of its legislative power is void.[24] Thus, subsection (f) of K.A.R. 28-16-28c is considered void and as a technical matter should be revoked. The third part of the issue is thus resolved by our determination that a regulation, which has been inconsistent with the EPA definition of "waters of the United States," is void and has no legal effect.
In conclusion, the federal Clean Water Act's water quality standards apply only to "natural ponds" and not to artificially created ponds. While K.S.A. 1999 Supp. 65-171d(d) exempts "reservoirs and farm ponds" from water quality standards (absent discharge or seepage to surface or groundwater, or impairment to the health of persons using the reservoir or farm pond), interpretation of that term as non-natural ponds provides consistency between Kansas law and the Clean Water Act. A duly adopted regulation as proposed herein would clarify that the "reservoirs and farm ponds" to which K.S.A. 1999 Supp. 65-171d(d) refers are not "natural ponds" and therefore not part of"waters of the United States" as defined by the Environmental Protection Agency pursuant to the Clean Water Act. Since nearly all "reservoirs and farm ponds" located on Kansas farms are not "natural ponds," such "reservoirs or farm ponds," whether privately or publicly owned, are not subject to water quality standards of the Clean Water Act.
The Clean Water Act's water quality standards apply to lakes and wetlands. Subsection (f) of K.A.R. 28-16-28c which attempts to exempt lakes and wetlands from water quality standards is not authorized under Kansas law and thus is void. Determination that this subsection, which has been inconsistent with the Environmental Protection Agency's definition of "waters of the United States" is void provides additional consistency between Kansas law and the Clean Water Act.
Finally, Attorney General Opinion No. 87-154 is withdrawn to the extent it is inconsistent with the conclusions reached herein.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Camille Nohe Assistant Attorney General
CJS:JLM:CN:jm
[1] 33 U.S.C. § 1251 et seq.
[2] 33 U.S.C. § 1251(a).
[3] 33 U.S.C. § 1251 (a)(1).
[4] 33 U.S.C. § 1311 (a).
[5] 33 U.S.C. § 1362(7).
[6] U.S. v. Riverside Bayview Homes, 474 U.S. 121, 133, 106 S.Ct. 455,461, 88 L.Ed.2d 419 (1985).
[7] See, e.g. U.S. v. Riverside Bayview Homes, supra, 474 U.S. at 133,106 S.Ct. at 462 ("Congress intended to define the waters covered by the Act broadly."); Quivera Mining Co. v. EPA, 765 P.2d 126, 129 (10th Cir. 1985) ("It is the intent of the clean Water Act to cover, as much as possible, all waters of the United States instead of just some.").
[8] Village of Oconomowoc Lake v. Dayton Hudson Corp., 24 F.3d 962 (7th Cir. 1994) (emphasis original).
[9] 40 C.F.R. § 122.2 (EPA). The comparable Corps of Engineers regulation appears at 33 C.F.R. § 328.3(a).
[10] Village of Oconomowoc Lake v. Dyaton Hudson Corp, 24 F.3d 962 (7th Cir. 1994).
[11] Id., at 965, "Rainwater runoff from the 110-acre site (including 25 acres of paved parking) will collect in a 6-acre artificial pond."
[12] Id., at 962.
[13] Washington Wilderness Coalition v. Hecla Mining Co.,870 F. Supp. 983 (E.D. Washington 1994).
[14] E.g. No cases that address ponds are referenced in "What are `Navigable Waters' Subject to Federal Water Pollution Control Act?" 160 ALR Fed. 585 (2000), or in prior annotation, "What Are `Navigable Waters' Subject to the Provisions of the Federal Water Pollution Control Act, as amended (33 U.S.C.S §§ 1251 et seq.)?" 52 ALR Fed. 788 (1981).
[15] 33 C.F.R. § 323 et seq.
[16] 33 C.F.R. § 323.2(b).
[17] Absent discharge or seepage to surface or groundwater, or impairment to the health of persons using such waters.
[18] Attorney General Opinion No. 87-154.
[19] Oconomowoc, supra.
[20] K.A.R. 28-16-28b et seq.
[21] K.A.R. 18-16-28c(f).
[22] K.A.R. 18-16-28b(rr).
[23] Except, as provided in K.S.A. 1999 Supp. 65-171d(d), in relation to water discharge or seepage to surface or groundwater, or in relation to the public health of persons.
[24] In the Matter of the Appeal of Alex R. Masson, Inc., from anAssessment of Retailers' Sales Tax, 21 Kan. App. 2d 863 (1995). See alsoBoard of Sedgwick County Commissioners v. Action Rent to Own, Inc.,266 Kan. 293 (1998).